IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORRAINE HOWARD,   )
                   )
       Plaintiff,  )
                   )
  v.               )  No.  04 C 933
                   )
UNITED PARCEL SERVICE,  )
                   )
       Defendant.  )

## MEMORANDUM OPINION AND ORDER

Lorraine Howard ("Howard") has sued United Postal Service, Inc. ("UPS"), asserting that it discriminated against her (1) on account of her race and sex in violation of Title VII of the Civil Rights Act ("Title VII," 42 U.S.C. §§2000e to 2000e-17) and (2) on account of her age in violation of the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§621 to 634).[1] UPS has moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56. Even with the record viewed in her favor as Rule 56 requires, Howard has not come forward with enough facts for a reasonable jury to conclude that she ought to prevail on any of her discrimination claims. UPS' Rule 56 motion is therefore granted, and this action is dismissed in its entirety.

## Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the

---

[1] Further citations to the statutes invoked by Howard will take the form "Section --," omitting references to "42 U.S.C." and "29 U.S.C." Because the section numbering in Title VII and ADEA is so different, that usage should present no possible confusion.

absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate an issue of triable fact" (<u>id</u>.). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements to highlight which facts are in dispute and which are agreed upon.[2] When UPS filed its Rule 56 motion, this Court followed its invariable practice of providing pro se plaintiff Howard with the attached explanation of both Rule 56 and LR 56.1 (plus copies of those rules).[3]

---

[2] UPS' LR 56.1 statement will be cited throughout this opinion as "U. St. ¶--," while its legal memorandum will be cited as "U. Mem." Citations to Howard's submissions will carry the prefix "H."

[3] As called for by LR 56.2, UPS also served Howard with a like notice and--though not expressly required--sent her copies

Despite the clarity of this Court's letter and its enclosures, what Howard then tendered largely failed to comply with the LR 56.1(b)(3) ground rules. To be sure, there are a number of instances in which Howard simply agrees that the facts adduced by UPS are undisputed. But the remainder (and bulk) of Howard's submission contains disputes based on (1) facts not at issue, (2) evidence that is inadmissible hearsay, (3) evidence that does not support Howard's contentions and (4) what Howard incorrectly describes, without any elaboration, as UPS' failure to provide documents to support its statements.[4] Those nonresponses simply will not do. As our Court of Appeals has repeatedly emphasized, any factual assertions that are thus inadequately contested are deemed admitted (see, e.g., Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003)).

---

of the Rules as well.

[4] Howard offers three versions of that claim throughout her LR 56.1 statement. She claims (1) UPS "did not provide any documentation to support this fact," (2) UPS has "not provided any documents to support this statement their alleged business decision" and (3) "UPS has not provided the documents that define the terms and conditions of a reassignment, a transfer, a lateral assignment, a promotion or a demotion" (H. St. ¶¶5-9, 13-15, 17-18, 20-24, 27-28, 30-32, 35, 41-44, 46-51, 53, 57-59, 63-67 and 69). None of these contentions has merit. Although in a few instances UPS improperly cited to Howard's unverified Complaint (see Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996)), the other record evidence it submitted--including depositions, affidavits and declarations made under penalty of perjury--is admissible (Rule 56(e); 28 U.S.C. §1746). And in all but one minor and nonmaterial instance (described in n. 6) that evidence supports the factual contentions that UPS advances, making further proof unnecessary.

3

But that does not end the story. In addition to a response to the movant's LR 56.1 statement of facts, a nonmovant may submit a statement of any additional facts that require the denial of summary judgment. Howard has provided just such facts, albeit embedded in her memorandum of law. Some of those facts contain proper citations to the record, while others are simply unsupported bald assertions or are "supported" only by inadmissible evidence.[5] While this Court could, as the price for her noncompliance, refuse to consider any of that additional evidence (see, e.g., Cichon v. Exelon Generation Co., 401 F.3d 803, 809-10 (7th Cir. 2005)), such an evidentiary death sentence is not necessary. Even considering Howard's claims in light of all the admissible additional facts she has tendered, as this opinion will do, Howard has not presented enough such evidence to overcome UPS' motion for summary judgment.

## Background

UPS hires technicians to work as part of its Technical Support Group ("Group"), as part of its Technical Support Center

---

[5] For example, in her attempt to show that UPS' stated reason for transferring her was a pretext for discrimination, Howard cites an email exchange between herself and Jimmy Millard regarding settlement discussions. Howard states that email shows that "Defendants' [sic] nondiscriminatory business decision is nothing but a cover for intentional discrimination" (H. Mem. ¶60). Among other problems with that exhibit, including her failure to demonstrate Jimmy Millard's role in the UPS hierarchy, such settlement evidence is inadmissible as a demonstration of either the validity of Howard's claims or UPS' liability (see Fed.R.Evid. 408).

4

("Center") or as part of both (U. St. ¶14). At various locations in the field, Group provides technical support to UPS computer users in the area, while Center provides technical support to users via the telephone and remotely through the computer (id. ¶15).

When Howard was hired in February 1998 to work as a technician, she was assigned to Center's Help Desk in UPS' North Illinois District, which was at the time within the North Central Region (id. ¶16). Just over a year later she was transferred, with no change in salary, to perform field work as part of Group located at UPS' Bloomingdale, Illinois facility (id. ¶17).

Due to a UPS reorganization in 2000, Howard was again transferred to perform Group field work at the Oakbrook facility (id. ¶18). Although she started out there at the same job level and salary as before, while at Oakbrook Howard was promoted to Group Technician II (H. Ex. 5). In her new capacity Howard was instructed, among her other duties, to research and resolve a perceived shortage of software licenses (U. St. ¶20). Howard's solution to the problem was for management to purchase additional software licenses at a cost of approximately $19,000 (id. ¶21). In April 2001 Howard's supervisor Daniel Mitchell ("Mitchell") reviewed her suggestions and discovered that there was an excess number of unused software licenses at other UPS facilities, so that the additional purchases were not needed (id. ¶22).

At the same time (and perhaps as part of the same review, although the record is not clear on that), Mitchell also discovered that unauthorized copies of Microsoft Office were installed on computers at the Oakbrook facility (Mitchell Dep. 44-45). Howard was "asked to explain" how the unauthorized installation had occurred (id. at 45).

In the spring of 2001 Howard was assigned to return to Group at the Bloomingdale location (U. St. ¶24).[6] One or two months after her return to Bloomingdale, Howard was given a special assignment to develop a proposal to move the Oakbrook facility toward becoming a paperless operation (id. ¶¶27, 28). Howard spent several months pulling together a proposal, although it was ultimately not adopted because it would have increased (rather than decreasing) the costs of the Oakbrook facility's operations (id. ¶¶29, 30).

Despite Howard's lack of success in the projects described above, in July 2001 she was promoted to Group Senior Technician (id. ¶12). After that promotion, in late 2001 Group assigned Howard to perform another special assignment, this time in the Collections Department (id. ¶¶12, 32). Howard received mixed

---

[6] It is difficult from the record to determine the exact date of that transfer. UPS says that Howard returned to the Bloomingdale facility in March 2001, but it cites as proof two contradictory documents--Howard's deposition testimony and the declaration of Manager Larry LaPlaunt ("LaPlaunt"). LaPlaunt's declaration matches the March 2001 date, but Howard's testimony is that she was not transferred until May 7, 2001.

reviews for her performance of that assignment. Although LaPlaunt received complaints about Howard's performance, Howard's immediate supervisor John Warner stated that she was meeting all expectations (LaPlaunt Dep. 8, 35; U. St. ¶¶33, 34). Howard's formal evaluation in August 2002 split the difference: She received a score of 3.2. In the UPS scoring scheme (which ranges from 1 to 6, with 6 being the highest) a score of "3" means "meets nearly all expectations" and a score of "4" means "meets all expectations" (LaPlaunt Dep. 12).

Due to a cost-cutting initiative implemented by UPS, in December 2002 Howard's special assignment in the Collections Department was eliminated (U. St. ¶35). As an additional part of that initiative, UPS closed its Midwest Region computer Help Desk and transferred the work previously done by that Help Desk to Center's North Central Region Help Desk ("North Central Help Desk") (id. ¶42). As a result the North Central Help Desk was inundated with phone calls and was hence understaffed (id. ¶¶43, 44).

LaPlaunt met with Howard and her co-worker Lynn Healy ("Healy"), both of whom were then Senior Technicians on special assignments, to notify them that they were being reassigned to the North Central Help Desk effective January 1, 2003 (id. ¶¶45, 46). LaPlaunt explained the bases for their reassignment: Both of their special assignments were being eliminated, there was

additional need at the North Central Help Desk because of the consolidation and they were chosen to help fill that need because of their particular skills (id. ¶¶47, 49, 50; H. Ex. 41).[7] Howard incurred neither any pay decrease nor any change in job title as a result of her reassignment (U. St. ¶51).

In February 2003 Howard again received a performance appraisal, this time earning a 3.4 score (id. ¶39). At the same time her co-worker Healy was promoted into a full-time management position (id. ¶62).

Five months after her transfer to the North Central Help Desk, Howard filed charges of employment discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, claiming that UPS had discriminated against her on the basis of her race, sex and age. After receiving a right-to-sue letter, Howard filed this lawsuit in

---

[7] Specifically UPS explained in response to Int. 9 in Howard's First Set of Interrogatories (part of H. Ex. 41) that at the time of the consolidation:

> The [Group] was overstaffed because it was no longer providing a programming position and the training duties were being moved to the [Center] function. At that time, Plaintiff was responsible for the programming and Healy was responsible for the training, thus their functions were no longer needed in [Group]. The decision to select Plaintiff and Healy to move to the Help Desk was also based on their current skill sets regarding their hardware, networking, and F&A support skills. The other technicians remaining in [Group] had a higher level of skill in the areas needed while Howard's and Healy's skill sets were better served in the [Center].

8

February 2004. One month later UPS offered her an opportunity to transfer to a Group position, but Howard declined, believing that the offer was "inappropriate" because the position was the subject of her lawsuit against UPS (id. ¶¶55, 56).

## Race, Sex and Age Discrimination Claims

In the total absence of anything even remotely resembling the proverbial "smoking gun," Howard has chosen to travel the familiar indirect burden-shifting route under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to prove her claims of race, sex and age discrimination.[8] Under that approach Howard bears the initial burden of establishing[9] a prima facie case (Herron v. DaimlerChrysler Corp., 388 F.3d 293, 299 (7th Cir. 2004)). To do so for each of her discrimination claims, she must show (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably (id.; accord,

---

[8] McDonnell Douglas' burden-shifting method, as both parties recognize, applies as much to ADEA actions as it does under Title VII (Jordan v. City of Gary, Ind., 396 F.3d 825, 833 (7th Cir. 2005)).

[9] Although the text of this opinion speaks of what a plaintiff must "prove" or "establish" or "demonstrate" or the like, those terms merely echo the terminology in the caselaw and are not the standards applied here. Instead this Court has (as always) applied the appropriate Rule 56 standard, imposing on Howard the lesser burden of identifying a genuine issue of material fact as to the essential elements of her case.

9

e.g., Whittaker v. N. Ill. Univ., 424 F.3d 640, 647 (7th Cir. 2005)).[10]

Howard has not cleared (and cannot clear) that prima facie hurdle.[11] And that is so despite her having met the first two criteria involved. That threshold success is an easy accomplishment as to the first requirement under each statute, for she is an African American female over the age of 40 (see Sections 2000e-2(a)(1) and 631(a)). But as for the second, a bit more explanation is needed.

On that score there is plainly a genuine issue of material fact as to whether Howard was meeting her employer's legitimate expectations in late 2002 and early 2003, the operative period at issue (see Johal v. Little Lady Foods, Inc., 434 F.3d 943, 946 (7th Cir. 2006)).[12] When Howard's performance was evaluated in

---

[10] In some age discrimination cases the fourth factor is replaced by a somewhat less stringent inquiry as to whether a substantially younger employee replaced the plaintiff (see, e.g., Olson v. N. FS, Inc., 387 F.3d 632, 635-36 (7th Cir. 2004)).

[11] Howard's failure at the prima facie stage makes it unnecessary to go on with the McDonnell Douglas formula by analyzing whether (1) UPS has a legitimate non-discriminatory reason for its action and (2) whether that asserted justification was merely a pretext for discrimination (see Herron, 388 F.3d at 300). Nonetheless this opinion will also briefly touch on that analysis just before its Conclusion section.

[12] That operative period is the time when the adverse action occurred (see Johal, 434 F.3d at 946). Although Howard asserts that she suffered two adverse actions--a reprimand in April 2001 and her transfer in January 2003--as will be discussed below, only the January 2003 transfer is timely as a basis for possible relief, so that a review of her performance around that time

August 2002 and February 2003, her rating was somewhere between meeting nearly all and meeting all of UPS' expectations. Even so she received a merit raise for the year 2003, something that normally connotes an employer's satisfaction with the employee's performance (see Griffin v. Potter, 356 F.3d 824, 828 (7th Cir. 2004)). Moreover, LaPlaunt could not recall ever having issued in 2002 any oral or written warning to the contrary (LaPlaunt Dep. 18-19). UPS cannot stuff the bullet back into the muzzle, staving off the existence of a genuine issue of material fact, by citing any negative project-specific or incident-specific evaluations--particularly where those had occurred in 2001, antedating the 2003 merit raise.

Even with the benefit of the most favorable inferences, however, Howard's claim succumbs on both the third and fourth elements of the prima facie case. Although one such failure would be enough to spell defeat, this opinion will treat with both shortfalls.

First, even though our Court of Appeals has extended the concept of an "adverse employment action" beyond the obvious examples of firing or a reduction in benefits or pay, it still requires some meaningful detriment that alters the terms and conditions of employment (see, e.g., Whittaker, 424 F.3d at 648). Here Howard claims that she suffered two adverse employment

---

period becomes relevant.

actions: one when she contends she received a negative evaluation for installing unauthorized Microsoft Office licenses at the Oakbrook facility in April 2001,[13] and the other when she was transferred laterally from Group to Center's North Central Help Desk after her special assignment ended in January 2003.

As for the first of those, even on the premise that asking Howard to explain the occurrence gave rise to some sort of negative evaluation, that took place more than 300 days before Howard filed her EEOC charge, making it time-barred as a basis for action (see, e.g., Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 637 (7th Cir. 2004); Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, 277 F.3d 882, 892-93 (7th Cir. 2001)).[14] And as for the second, the transfer about which she complains did not meet even the relaxed concept of an adverse employment action. True enough, the record (and this lawsuit)

---

[13] That proposition is dubious at best. Howard attempts to cite LaPlaunt's deposition in an effort to show that she was the victim of discriminatory discipline after Mitchell discovered that unauthorized copies of Microsoft Office were installed on UPS computers. But all LaPlaunt said was that he could not confirm that a letter of reprimand was in Howard's file and that he could not remember if other technicians were or were not disciplined. Even more importantly, what is said in n.14 would control even if a letter of reprimand had indeed been issued.

[14] That makes it unnecessary to decide definitively whether such a negative evaluation alone (even if there were one), unaccompanied by any tangible detrimental treatment (either then or in the ensuing several years), even arguably constituted an "adverse employment action." But in that respect, again see Whittaker, 424 F.3d at 648, which strongly supports a "no" answer to that question.

12

show that Howard believes her lateral transfer was a demotion, but that subjective belief "does not a Title VII claim create" (Place v. Abbott Labs., 215 F.3d 803, 810 (7th Cir. 2000)).

Instead, as Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 744 (7th Cir. 2002) teaches, where a lateral transfer is unaccompanied by a reduction in pay it must:

> significantly reduce[] the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted.

Herrnreiter, id. at 745 explains that such a detrimental transfer is to be distinguished from transfer to a position that differs only "in idiosyncratic terms that do not justify trundling out the heavy artillery of federal antidiscrimination law."

Howard's lateral transfer from Group to Center involved just the type of nonmaterial "idiosyncratic" differences that were at play in Herrnreiter. Neither Howard's title nor her pay was altered following the transfer, nor did her job responsibilities change in any material way. Both as a Senior Technician in Group and at North Central's Help Desk, Howard was responsible for providing technical support to UPS computer users. While Howard may have preferred the former because she was able to carry a BlackBerry and had less direct supervision, such differences do not make the desk position objectively inferior to the field position (see H. Exs. 10, 11; see also Herrnreiter, 315 F.3d at 745). Moreover, Howard's transfer to the Help Desk can hardly be

13

considered to have diminished her career prospects: Indeed, it was from the Help Desk that Healy was promoted--not from the field.[15]

As if that alone were not enough to call for dismissal of this action (and it is), Howard also has not raised a material factual issue as to any similarly situated employees outside of the protected classes having been treated more favorably. To do so she "must demonstrate there is someone who is directly comparable to [her] in all material respects" (Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002)). As Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000) spells out:

> In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case.

Howard attempts to meet her burden by offering evidence (1) that similarly situated non-black male employees were not reprimanded for installing unauthorized copies of Microsoft Office on UPS computers and (2) that Eric Stensby replaced her when she transferred from Group at Oakbrook to Group at

---

[15] Additionally, it is of some note that Howard had no guaranty from UPS that she "would remain forever in the job she held before her transfer" (Place, 215 F.3d at 810). As U. St. ¶53 makes clear:

> It is common for UPS to rotate employees to various job assignments, including to occasionally reassign them to the same position they may have previously held, when UPS business needs mandate such a move.

14

Bloomingdale.[16] Because they relate only to events occurring in 2001, those arguments might have traction for Howard's time-barred claims of discriminatory "discipline,"[17] but they have no relevance to Howard's timely contention that her transfer from Group to Center in 2003 was motivated by discriminatory animus.[18] To the contrary, Howard has made no attempt to compare UPS' handling of her 2003 transfer to that of any UPS non-black or male or substantially younger similarly situated employee. As U. Mem. 8 reflects, Senior Technician Healy, a white woman and the only other technician who had been on special assignment in

---

[16] Notably, Howard's memorandum refers to no admissible proof of Stensby's age, race, job qualifications or position. Although not cited to, there is some information on Stensby in Howard's unverified complaint and unsigned (and therefore unsworn) EEOC charge. Neither, however, is admissible into evidence (cf. Markel v. Bd. of Univ. of Wis. Sys., 276 F.3d 906, 912 (7th Cir. 2002)).

[17] Additionally, Howard never claimed that her 2001 transfer from Group at Oakbrook to Group at Bloomingdale was discriminatory. And it cannot even be hypothesized, without further evidence, how Stensby--with whom Howard shared exactly the same position in Group following the transfer, albeit at different locations--was treated more favorably than she was.

[18] This Court is of course mindful that, as stated in West v. Ortho-McNeil Pharm. Corp., 405 F.3d 578, 581 (7th Cir. 2005), quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002):

> [A]cts outside the statutory time period cannot be the basis for liability, but the statute does not "bar an employee from using the prior acts as background evidence in support of a timely claim."

That principle, however, does not help Howard here.

December 2002, also was sent to Center's North Central Help Desk following the UPS consolidation. And what is more, as U. Mem. 3 also points out, two other technicians outside of all of Howard's protected classes--non-black males under the age of 40--followed the same path that Howard traveled: They went from Center to Group to Center.

One final nail in the coffin of Howard's lawsuit: Even if Howard had been able to establish a prima facie case (as she has not), her claim would still fail because of her inability to refute, as pretextual, UPS' legitimate reasons for her lateral transfer to Center. As already stated, UPS offers uncontroverted proof that it reassigned Howard following its corporate consolidation, placing her in the position that it felt best matched UPS' needs and Howard's capabilities.

All that Howard tenders in attempted contradiction of that wholly plausible explanation, which is entirely consistent with UPS' treatment of its other employees who are not part of any protected group, is a grab bag of irrelevant and inadmissible facts and bald assertions--for example, that Stensby was transferred to Group (in 2001, two years before the consolidation), that UPS sought to settle Howard's case and that UPS people "lied on various occasions in the depositions" (H. Mem. 12). Unsurprisingly, none of that, when viewed objectively, provides even a whisper of pretext. So there is still another

and independent basis for dismissal under Rule 56.

## Conclusion

Without any evidence to support an inference of discrimination, Howard's claims--even taken at their best--have simply come undone. Because she has not demonstrated the existence of any genuine issue of material fact that would preclude summary judgment, UPS' Rule 56 motion is granted in its entirety. This action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 8, 2006

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

CHAMBERS OF
MILTON I. SHADUR
SENIOR JUDGE

CHICAGO, ILLINOIS 60604

December 14, 2005

Ms. Lorraine Howard
2753 West 83rd Street
Chicago IL 60652

          Re:    Howard v. United Parcel Service, Inc.
                 Case No. 04 C 933

Dear Ms. Howard:

     As you know, the employment discrimination lawsuit that you have brought against United Parcel Service, Inc. ("UPS") is now pending on my calendar. In accordance with the schedule that I set at the last status hearing, on December 12 UPS filed its motion for summary judgment, together with supporting papers, in accordance with Rule 56 of the Federal Rules of Civil Procedure.

     As contemplated by Rule 56, the schedule that I had established after conferring with you and UPS' counsel at that status hearing requires that any responsive materials that you plan to file must be submitted--with a courtesy copy delivered or mailed to me in my chambers--in time to arrive here on or before January 23, 2006 (after which a January 30 status hearing has been set to discuss whether or not a UPS reply is called for). In any event, when I have reached my decision on the motion, my minute clerk will advise both you and defense counsel to that effect.

     Because of the importance and potentially final nature of a summary judgment motion, this letter is intended to inform you of the consequences if you were to ignore my order, or if any materials that you do submit are legally insufficient.[1] By its motion for summary judgment, UPS is asking to have the suit decided in its favor without a full-scale trial, based on the evidence presented in the documents attached to its motion. Unless you answer the motion with your own affidavits or properly supported documentary evidence or both, only UPS' evidence will

---

[1] UPS has also served you with a similar notice, as is required under this District Court's Local Rules.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CHAMBERS OF
MILTON I. SHADUR
SENIOR JUDGE

CHICAGO, ILLINOIS 60604

Ms. Howard
December 14, 2005
Page Two

be before me. Thus your failure to respond in that way would be the equivalent of your failing to present any evidence in your favor at a trial.

Under Rule 56(e), a copy of which is enclosed, you may not simply rest on any unsworn documents that you may previously have filed in court. Such documents are not a proper response to a motion for summary judgment. Under the same Rule, if you do not submit timely affidavits or documentary evidence, I may accept the facts that have been declared in UPS' submission as true and, if those facts justify a decision in UPS' favor, may enter summary judgment against you. In that event you will have lost your case, and judgment will be entered in UPS' favor.

That same result may follow if any matters that you do submit are not legally sufficient to establish your claim against UPS. Of course I am not in a position to indicate what is necessary for that purpose. Instead I will simply evaluate any submission that you choose to file on or before the January 23 deadline.

To assist judges in determining whether any factual disputes exist and, if they do, whether such disputes are legally significant, our District Court has adopted its own rules--LR 56.1 and 56.2, photocopies of which are also enclosed--to supplement Rule 56. As part of any submission you choose to file, you will be expected to comply with LR 56.1(b)(as you will note, that Rule specifically provides that unless your own statement in response shows that any part or parts of UPS' LR 56.1(a) statement is or are disputed, the statement [or the parts not identified by you as in dispute] will be considered as having been admitted by you).

Sincerely,

Milton I. Shadur

MIS:wb
enclosure
cc: Ellen M. Girard, Esq.